**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ANNA LA FRONZA, and NATALIA KUPIEC, individually and on behalf of all others similarly situated, | ) ) ) | |
| | ) | Case No. 1:21-cv-03026 |
| Plaintiffs, | ) ) | Hon. Judge John J. Tharp, Jr. |
| v. | ) ) | Magistrate Judge Sheila M. Finnegan |
| TRUTHFINDER, LLC, a Delaware limited liability company, | ) ) ) | |
| Defendant. | ) ) | |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION
PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(B)(2), 12(B)(3), AND
12(B)(6) TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, TO DISMISS
<u>PLAINTIFFS' COMPLAINT</u>**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

BACKGROUND FACTS AND PLAINTIFFS' MATERIAL ALLEGATIONS ......................... 2

ARGUMENT ........................................................................................................................ 3

    I.      Plaintiffs Agreed To Arbitrate Their Claim............................................................ 3

    II.     The Communications Decency Act Bars Plaintiffs' Claim. ................................... 6

    III.    Plaintiffs Have Failed To State A Claim Under IRPA. ......................................... 9

           A.     Plaintiffs Failed To Plead A Claim Within IRPA's Territorial Scope........ 9

           B.     Plaintiffs Fail To Plead A *Prima Facie* IRPA Claim. ............................. 11

           C.     Plaintiffs' Claim Falls Within IRPA's Statutory Exemptions. ................. 14

    IV.    TruthFinder's Alleged Conduct Is Protected By The U.S. Constitution. ............. 18

           A.     TruthFinder's Search Results Are Protected Speech Within The First
                 Amendment........................................................................................ 18

           B.     Applying IRPA To Search Results Violates The Dormant Commerce
                 Clause................................................................................................. 22

    V.     The Court Lacks Personal Jurisdiction Over Defendant....................................... 24

CONCLUSION.................................................................................................................... 25

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*ACLU v. Johnson*,
194 F.3d 1149 (10th Cir. 1999) ..................................................................23

*Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*,
751 F.3d 796 (7th Cir. 2014) ...............................................................24, 25

*Am. Booksellers Found. v. Dean*,
342 F.3d 96 (2d Cir. 2003)........................................................................23

*Am. Libraries Ass'n v. Pataki*,
969 F. Supp. 160 (S.D.N.Y. 1997) .............................................................23

*Asset Allocation & Mgmt. Co. v. W. Emps. Ins. Co.*,
No. 88 C 4287, 1988 WL 139247 (N.D. Ill. Dec. 22, 1988) ..........................4

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011)...................................................................................6

*Avery v. State Farm Mut. Auto. Ins. Co.*,
835 N.E.2d 801 (Ill. 2005)......................................................................9, 10

*be2 LLC v. Ivanov*,
642 F.3d 555 (7th Cir. 2011) ....................................................................24

*Ben Ezra, Weinstein, & Co. v. Am. Online Inc.*,
206 F.3d 980 (10th Cir. 2000) ....................................................................7

*Best v. Berard*,
776 F. Supp. 2d 752 (N.D. Ill. 2011) ....................................................17, 18

*Blair v. Nevada Landing P'ship*,
859 N.E.2d 1188 (Ill. App. Ct. 2d Dist. 2006)............................................11

*Blanton v. Womancare, Inc.*,
696 P.2d 645 (Cal. 1985) ...........................................................................5

*Bogie v. Rosenberg*,
705 F.3d 603 (7th Cir. 2013) ...............................................................14, 17

*Bolger v. Youngs Drug Prod. Corp.*,
463 U.S. (1983)....................................................................................18, 20

*Bristol-Myers Squibb Co. v. Superior Ct. of Cal. San Francisco Cty.,*
    137 S. Ct. 1773 (2017) ...........................................................................................24

*Brooks v. Ross,*
    578 F.3d 574 (7th Cir. 2009) ...................................................................................7

*Callahan v. Ancestry.com Inc.,*
    No. 20-cv-08437-LB, 2021 WL 2433893 (N.D. Cal. June 15, 2021) ...................8, 9

*Callahan v. PeopleConnect, Inc.,*
    No. 20-CV-09203-EMC, 2021 WL 1979161 (N.D. Cal. May 18, 2021)..................5

*Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n,*
    447 U.S. 557 (1980).........................................................................................21, 22

*Cher v. Forum Int'l, Ltd.,*
    692 F.2d 634 (9th Cir. 1982) .................................................................................20

*Chi. Lawyers' Comm. for Civil Rights Under Law, Inc. v. Craigslist, Inc.,*
    519 F.3d 666 (7th Cir. 2008) ...............................................................................7, 8

*Collier v. Murphy,*
    No. 02 C 2121, 2003 WL 1606637 (N.D. Ill. Mar. 26, 2003) ..........................15, 16

*Commodity Trend Serv., Inc. v. Commodity Futures Trading Comm'n,*
    149 F.3d 679 (7th Cir. 1998) .................................................................................21

*Cox Broad. Corp. v. Cohn,*
    420 U.S. 469 (1975).............................................................................................19

*Dean Witter Reynolds, Inc. v. Byrd,*
    470 U.S. 213 (1985)...............................................................................................3

*Dex Media W., Inc. v. City of Seattle,*
    696 F.3d 952 (9th Cir. 2012) .............................................................................18, 19

*Dobrowolski v. Intelius, Inc.,*
    No. 17 CV 1406, 2018 WL 11185289 (N.D. Ill. May 21, 2018)...........1, 12, 13, 14

*Esch v. Universal Pictures Co., Inc.,*
    No. 6:09-cv-02258-JEO, 2010 WL 5600989 (N.D. Ala. Nov. 2, 2010)................21

*Est. of Graham v. Sotheby's Inc.,*
    860 F. Supp. 2d 1117 (C.D. Cal. 2012) ...............................................................22

*F.T.C. v. Trudeau,*
    662 F.3d 947 (7th Cir. 2011) .................................................................................21

*Faulkenberg v. CB Tax Franchise Sys., LP*,
    637 F.3d 801 (7th Cir. 2011) ................................................3

*Feldman v. Google, Inc.*,
    513 F. Supp. 2d 229 (E.D. Pa. 2007) ......................................4

*Fiala v. Bickford Senior Living Grp., LLC*,
    32 N.E.3d 80 (Ill. App. 2d Dist. 2015) ....................................4

*Fischer v. Instant Checkmate, LLC*,
    No. 19 C 4892, 2021 WL 3033586 (N.D. Ill. July 19, 2021) ..................3

*Force v. Facebook, Inc.*,
    934 F.3d 53 (2d Cir. 2019)..............................................7, 8

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
    141 S.Ct. 1017 (2021) ....................................................25

*Gionfriddo v. Major League Baseball*,
    94 Cal. App. 4th 400 (Cal. App. Ct. 2001) .................................13

*Gonzalez v. Google*,
    2 F.4th 871 (9th Cir. 2021) ...............................................8

*Groden v. Random House, Inc.*,
    61 F.3d 1045 (2d Cir. 1995)...............................................21

*Gullen v. Facebook.com, Inc.*,
    No. 15 C 7681, 2016 WL 245910 (N.D. Ill. Jan. 21, 2016) ..................24

*Gupta v. Morgan Stanley Smith Barney, LLC*,
    934 F.3d 705 (7th Cir. 2019) ..............................................5

*Hadley v. GateHouse Media Freeport Holdings, Inc.*,
    No. 12 C 1548, 2012 WL 2866463 (N.D. Ill. July 10, 2012) ...............6, 7

*Hartman v. Lisle Park Dist.*,
    158 F. Supp. 2d 869 (N.D. Ill. 2001) ......................................4

*Haught v. Motorola Mobility, Inc.*,
    No. 12 C 2515, 2012 WL 3643831 (N.D. Ill. Aug. 23, 2012)................10

*Health Sys. Agency of N. Va. v. Va. State Bd. of Med.*,
    424 F. Supp. 267 (E.D. Va. 1976) .....................................18, 19

*Healy v. Beer Inst., Inc.*,
    491 U.S. 324 (1989).....................................................22

*Hui Ma v. Golden State Renaissance Ventures, LLC*,
No. 3:21-CV-00856-WHO, 2021 WL 2190912 (N.D. Cal. May 31, 2021) ............................6

*Huon v. Denton*,
841 F.3d 733 (7th Cir. 2016) ......................................................................9

*Indep. Living Res. Ctr. San Francisco v. Uber Techs., Inc.*,
No. 18-CV-06503-RS, 2019 WL 3430656 (N.D. Cal. July 30, 2019) .................................4, 6

*J.S.T. Corp. v. Foxconn Interconnect Tech.*,
965 F.3d 571 (7th Cir. 2020) ...............................................................24, 25

*Jane Doe No. 1 v. Backpage.com, LLC*,
817 F.3d 12 (1st Cir. 2016) .......................................................................7

*Janiga v. Questar Cap. Corp.*,
615 F.3d 735 (7th Cir. 2010) .....................................................................4, 5

*Jordan v. Jewel Food Stores, Inc.*,
743 F.3d 509 (7th Cir. 2014) ......................................................................20

*Kimzey v. Yelp! Inc.*,
836 F.3d 1263,1270 (9th Cir. 2016) ...............................................................8

*Kindred Nursing Ctrs. Ltd. P'ship v. Clark*,
137 S. Ct. 1421 (2017) .............................................................................6

*Klayman v. Zuckerberg*,
753 F.3d 1354 (D.C. Cir. 2014) ....................................................................8

*Knapke v. PeopleConnect Inc.*,
No. C21-262 MJP, 2021 WL 3510350 (W.D. Wash. Aug. 10, 2021) ...............................5, 18

*Krause v. RocketReach, LLC*,
No. 21 CV 1938, 2021 WL 4282700 (N.D. Ill. Sept. 21, 2021) ...........................7, 16, 17, 21

*Landau v. CNA Fin. Corp.*,
886 N.E.2d 405 (Ill. App. Ct. 1st Dist. 2008) ......................................................10

*Liberi v. Taitz*,
No. SACV 11-0485, 2011 WL 13315691 (C.D. Cal. Oct. 17, 2011) ..................................7

*Local TV, LLC v. Superior Ct.*,
3 Cal. App. 5th 1 (Cal. App. Ct. 2016) ............................................................13

*Lukis v. Whitepages Inc.*,
454 F. Supp. 3d 746 (N.D. Ill. 2020) ........................................................9, 13, 16, 24

*Lukis v. Whitepages Inc.*,
　No. 19 C 4871, 2020 WL 6287369 (N.D. Ill. Oct. 27, 2020) ...........................................14, 16

*McQuiston v. Marsh*,
　790 F.2d 798 (9th Cir. 1986) .......................................................................................................20

*Melena v. Anheuser-Busch, Inc.*,
　847 N.E.2d 99 (Ill. 2006) ...............................................................................................................5

*Miche Bag, LLC v. Be You, LLC*,
　No. 11-CV-720, 2011 WL 4449683 (N.D. Ill. Sept. 26, 2011) ...........................................10

*Midwest Title Loans, Inc. v. Mills*,
　593 F.3d 660 (7th Cir. 2010) ..............................................................................................22, 24

*Montana v. San Jose Mercury News, Inc.*,
　34 Cal. App. 4th 790 (Cal. App. Ct. 1995) ..............................................................................21

*N. Grain Mktg., LLC v. Greving*,
　743 F.3d 487 (7th Cir. 2014) .......................................................................................................24

*Namath v. Sports Illustrated*,
　363 N.Y.S.2d 276 (N.Y. Sup. Ct. 1975) ....................................................................................21

*Nat'l Paint & Coatings Ass'n v. City of Chicago*,
　45 F.3d 1124 (7th Cir. 1995) .......................................................................................................23

*Nieman v. Versuslaw, Inc.*,
　No. 12-3104, 2012 WL 3201931 (C.D. Ill. Aug 3, 2012) ...................................13, 17, 19, 20

*Obado v. Magedson*,
　No. Civ. 13-2382 JAP, 2014 WL 3778261 (D.N.J. July 31, 2014) .....................................7, 13

*Ostergren v. Cuccinelli*,
　615 F.3d 263 (4th Cir. 2010) .......................................................................................................19

*Page v. Something Weird Video*,
　960 F. Supp. 1438 (C.D. Cal. 1996) ..........................................................................................21

*Pearson v. Edgar*,
　153 F.3d 397 (7th Cir. 1998) .......................................................................................................21

*Progress Printing Corp. v. Jane Byrne Pol. Comm.*,
　601 N.E.2d 1055 (Ill. App. Ct. 1st Dist. 1992) .........................................................................5

*PSINet, Inc. v. Chapman*,
　362 F.3d 227 (4th Cir. 2004) .......................................................................................................23

*Reed v. Town of Gilbert*,
    576 U.S. 155 (2015)................................................................................................19

*Rivera v. Google Inc.*,
    238 F. Supp. 3d 1088 (N.D. Ill. 2017) ...................................................................10

*Rogers v. Grimaldi*,
    875 F.2d 994 (2d Cir. 1989).....................................................................................13

*Siegel v. Zoominfo Techs., LLC*,
    No. 21 C 2032, 2021 WL 4306148 (N.D. Ill. Sept. 22, 2021).........................13, 14

*Simoni v. Am. Media, Inc.*,
    2014 WL 12597640 (C.D. Cal. July 22, 2014)........................................................21

*Sorrell v. IMS Health Inc.*,
    564 U.S. 552 (2011)............................................................................................18, 19

*Thompson v. Getty Images (US), Inc.*,
    No. 13 C 1063, 2013 WL 3321612 (N.D. Ill. July 1, 2013) .................................11, 13, 14, 23

*Tompkins v. 23andMe, Inc.*,
    No. 5:13-CV-05682-LHK, 2014 WL 2903752 (N.D. Cal. June 25, 2014) ...............4

*Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*,
    425 U.S. 748 (1976)....................................................................................18, 20, 22

*Valley Air Serv. v. Southaire, Inc.*,
    No. 06 C 782, 2009 WL 1033556 (N.D. Ill. Apr. 16, 2009)....................................10

*Vrdolyak v. Avvo, Inc.*,
    206 F. Supp. 3d 1384 (N.D. Ill. 2016) ..............................................................11, 19

*Vulcan Golf, LLC v. Google Inc.*,
    552 F. Supp. 2d 752 (N.D. Ill. 2008) ......................................................................9

*Willan v. Columbia Cnty.*,
    280 F.3d 1160 (7th Cir. 2002) ...............................................................................19

*William O'Neil & Co., Inc. v. Validea.com Inc.*,
    202 F. Supp. 2d 1113 (C.D. Cal. 2002) ..................................................................20

*Zeran v. Am. Online, Inc.*,
    129 F.3d 327 (4th Cir. 1997) ...................................................................................8

**Statutes**

765 ILCS 1075/5.......................................................................................................11

765 ILCS 1075/30(a) ............................................................................................11

765 ILCS 1075/35...........................................................................15, 16, 17, 18

Ariz. Rev. Stat. § 12-761(H)(1) ..........................................................................16

Cal. Civ. Code § 3344.1(a)(2)...............................................................................16

Haw. Rev. Stat. § 482P-7(b)(1) ...........................................................................16

Okla. Stat. Title 12, § 1448(N)(3).........................................................................16

Tex. Prop. Code § 26.012(a)(4) ............................................................................16

Wash. Rev. Code § 63.60.070(2)(a) ......................................................................16

**Other Authorities**

1 Rights of Publicity and Privacy § 6:3, Westlaw (2d. ed. updated 2021) ...................................23

Fed. R. Civ. P. 12 ...............................................................................................3, 24

HB 1422, 90th Gen. Assemb., 49th Leg. House Proceedings, Tr. of House Debate
    228 (Ill. Apr. 24, 1997) ...............................................................................9

HB 1422, 90th Gen. Assemb., 49th Leg. House Proceedings, Tr. of House Debate
    7–8 (Ill. May 21, 1998) ................................................................................9

12Ill. Prof. Conduct R. 1.2(a) ..............................................................................4

## <u>INTRODUCTION</u>

Defendant TruthFinder, LLC ("TruthFinder") operates a website that enables users to review public records information about queried individuals. These background reports facilitate a wide range of endeavors: from locating lost friends to reviewing property ownership data to monitoring one's own public reputation. Plaintiffs are not suing over the background reports, however. Instead, they have sued over the search results that are generated when a Truthfinder.com user types a first and last name into the search bar. Those search results inform the user if there are public records available about the person being searched. The search results are no different than any search engine on the internet that enables searches for people or information. Yet Plaintiffs allege that because the TruthFinder search results display information about the searched person (such as name and city), those results violate the Illinois Right of Publicity Act ("IRPA") by "advertising" TruthFinder's services.

Plaintiffs' suit should be stopped in its tracks for a simple reason—Plaintiffs are bound by the TruthFinder Terms of Use ("TOU") to resolve their claims with TruthFinder in arbitration.

Moreover, Plaintiffs' suit is meritless. In 2018, Judge Shah dismissed a virtually identical suit against Intelius, a similar "people search" website. *See* Complaint ("Compl.") ¶ 17; *Dobrowolski v. Intelius, Inc.*, No. 17 CV 1406, 2018 WL 11185289, at *3 (N.D. Ill. May 21, 2018). There are multiple reasons this Court should do the same here if this case is not sent to arbitration— Section 230 of the Communications Decency Act ("CDA") bars Plaintiffs' claims, Plaintiffs have failed to state claims under IRPA, both the First Amendment and the Commerce Clause foreclose their claims, and there is no basis for the Court to exercise personal jurisdiction over TruthFinder. At bottom, these failings all reflect that the statutory right of publicity Illinois recognizes simply has nothing to do with TruthFinder informing users via search results whether it can provide a background report about the person a user is searching.

## BACKGROUND FACTS AND PLAINTIFFS' MATERIAL ALLEGATIONS

TruthFinder owns and operates www.truthfinder.com, a website that "sell[s] access" to "detailed reports" about people; these reports are "compiled" from third-party sources, including "public record repositories." Compl. ¶¶ 1, 18. Plaintiffs do not allege it is unlawful for TruthFinder to sell these sorts of reports. Instead, Plaintiffs filed a one-count Complaint that takes issue with what users see numerous pages after they enter a name into the search bar on TruthFinder.com.

When a user visits TruthFinder.com, the website does not nor could it present a list of every individual about whom TruthFinder can create a report. *See id.* ¶ 18. Like websites across the internet, TruthFinder.com offers a free search function. *Id.* ¶ 2. This allows users to "search for an individual" to determine if TruthFinder can create a report about the searched individual. *Id.* After a user "typ[es] the individual's first and last name into the search bar," the user is shown search results that provide "a list of the individuals found" that have the "same name" as the queried individual and possibly some additional biographical information. *Id.* ¶¶ 2, 20. The user can view the person's report by clicking a link titled "Open Report." *Id.* ¶ 21. Ultimately, after a number of additional screens, the user then is taken to a separate page where the user is given the option to register to view "unlimited reports," including the background report of the searched for person. *Id.* A user also may elect just to "obtain a report on [that] one specific individual." *Id.* ¶ 22.

Plaintiffs do not allege that anyone other than their lawyers have ever searched for their names, ever viewed a search result displaying their names, or ever clicked the "Open Report" button next to their names. Nonetheless, they allege their identities were "misappropriated" under IRPA because user-initiated searches might present their names and other biographical information next to an "Open Report" button that ultimately links to a webpage that "market[s] and promote[s] a monthly subscription to access unlimited reports on individuals in its database." *Id.* ¶ 23.

2

## ARGUMENT

### I.     Plaintiffs Agreed To Arbitrate Their Claim.

Plaintiffs are in the wrong forum. *See* Fed. R. Civ. P. 12(b)(3).[1] The Federal Arbitration Act ("FAA") "mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). That obligates Plaintiffs to proceed in arbitration

TruthFinder's TOU create a valid and enforceable agreement to arbitrate. Indeed at least one court in this district recently held that a website with a similar clickwrap agreement and terms of service constitutes a valid and enforceable agreement to arbitrate. *Fischer v. Instant Checkmate, LLC*, No. 19 C 4892, 2021 WL 3033586, at *6 (N.D. Ill. July 19, 2021). That is the correct result here too. Just as in *Fischer*, before accessing the results of a search on TruthFinder.com, a user must click a button, below which appears a message indicating that doing so constitutes affirmative consent to the TOU. Declaration of Brian Mahon ("Decl.") ¶ 8. The TOU are hyperlinked directly from that message and contain the following:

> YOU AND THE COMPANY AGREE THAT ALL CLAIMS, DISPUTES OR CONTROVERSIES BETWEEN YOU AND THE COMPANY … INCLUDING, WITHOUT LIMITATION, TORT AND CONTRACT CLAIMS, CLAIMS BASED UPON ANY FEDERAL, STATE OR LOCAL STATUTE, LAW, ORDER, ORDINANCE OR REGULATION, AND THE ISSUE OF ARBITRABILITY, SHALL BE RESOLVED BY THE FINAL AND BINDING ARBITRATION PROCEDURES SET BELOW.

Decl. ¶ 10, Ex. 1, § 3.

There is every indication it was Plaintiffs' counsel who accepted the TOU. Initially, the Complaint includes screenshots of parts of TruthFinder.com that are accessible only after a user

---

[1] Because a motion to compel arbitration is brought pursuant to Fed. R. Civ. P. 12(b)(3), the pleadings need not be accepted as true, and this Court may consider facts outside of the pleadings. *Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 809–10 (7th Cir. 2011).

consents to the TOU. Compl. ¶¶ 20, 21; Decl. ¶ 13; *see Tompkins v. 23andMe, Inc.*, No. 5:13-CV-05682-LHK, 2014 WL 2903752, at \*7 (N.D. Cal. June 25, 2014), *aff'd*, 840 F.3d 1016 (9th Cir. 2016) (access to portions of website requiring consent to TOU establishes assent); *Feldman v. Google, Inc.*, 513 F. Supp. 2d 229, 237–38 (E.D. Pa. 2007) (same). And for another Complaint, Plaintiff La Fronza's counsel acknowledged that a member of his law firm visited Intelius.com, a similar website, to generate screenshots for a similar complaint. Decl. of W. Thomson, ¶ 3, *La Fronza v. PeopleConnect, Inc. et al*, No. 21-cv-00280 (N.D. Ill. Mar. 29, 2021), ECF No. 22-2. Given that history, it seems clear that Plaintiffs' counsel as their agents visited TruthFinder.com to generate screenshots for this Complaint, which required consent to the TOU.[2]

Plaintiffs thus are bound to the TOU, including the agreement to arbitrate. Under Illinois law, a lawyer is their client's "agent," *see Hartman v. Lisle Park Dist.*, 158 F. Supp. 2d 869, 876−77 (N.D. Ill. 2001), and an "agent may bind a principal to an arbitration agreement" if acting "within the scope of their agency." *See Janiga v. Questar Cap. Corp.*, 615 F.3d 735, 743 (7th Cir. 2010); *Asset Allocation & Mgmt. Co. v. W. Emps. Ins. Co.*, No. 88 C 4287, 1988 WL 139247, at \*5 (N.D. Ill. Dec. 22, 1988); *Fiala v. Bickford Senior Living Grp., LLC*, 32 N.E.3d 80, 91 (Ill. App. Ct. 2d Dist. 2015). And under Illinois law, the scope of an attorney's agency is to "take such action as is impliedly authorized to carry out the representation." Ill. Prof. Conduct R. 1.2(a).

Conducting searches that form the bases of Plaintiffs' claim and acquiring screenshots to include in a complaint are activities "within the scope of [Plaintiffs' counsel's] agency"—they are

---

[2] If Plaintiffs dispute that their counsel agreed to the TOU, or any other material fact relevant to the motion to compel arbitration, the Court should grant TruthFinder leave to engage in limited discovery regarding (1) Plaintiffs' and their counsel's use of TruthFinder.com, and (2) Plaintiffs' knowledge of and acquiescence to their counsel's use of same. *See Indep. Living Res. Ctr. San Francisco v. Uber Techs., Inc.*, No. 18-cv-06503 (N.D. Cal. May 6, 2019), ECF No. 35 at 1 (denying motion to compel arbitration, but granting "limited discovery" to "clarify the issue" of whether app "testers were plaintiffs' agents").

part and parcel of carrying out counsel's representation of Plaintiffs. *See Janiga*, 615 F.3d at 743.[3]

Further, even if Plaintiffs now try to claim that their counsel acted without authority, they have a

dubious proposition, Plaintiffs ratified that conduct. Ratification occurs "when a principal gains

knowledge of an unauthorized transaction but then retains the benefits or otherwise takes a position

inconsistent with nonaffirmation." *Progress Printing Corp. v. Jane Byrne Pol. Comm.*, 601 N.E.2d

1055, 1067 (Ill. App. Ct. 1st Dist. 1992). Here, Plaintiffs ratified the agreement by using

information and screenshots acquired for their benefit in their Complaint.

Plaintiffs likely will respond by citing *Knapke v. PeopleConnect, Inc.*, No. C21-262 MJP,

2021 WL 3510350, at *3 (W.D. Wash. Aug. 10, 2021) and *Callahan v. PeopleConnect, Inc.*, No.

20-CV-09203-EMC, 2021 WL 1979161, at *5 (N.D. Cal. May 18, 2021). But *Knapke* relied on

*Callahan*, *see* 2021 WL 3510350, at *3, and *Callahan* relied on *Blanton v. Womancare, Inc.*, 696

P.2d 645 (Cal. 1985), which is not an Illinois decision and does not apply Illinois law. Also,

*Blanton* is easily distinguished—there, the plaintiff's attorney agreed to arbitrate against his

client's express instructions two days before trial (well after the right to a jury trial attached[4]), and

agreed to severely limited damages and a defense counsel arbitrator. None of those factors are

present here. Finally, *Callahan* posits that under California agency law "absent client consent or

ratification, a lawyer cannot bind a client to an arbitration agreement" unless the client "expressly

authorize[s] [him] to enter into the arbitration agreement." 2021 WL 3510350, at *6. This is an

incorrect reading of California law. *See* Br. of Defendant-Appellant, *Callahan v. PeopleConnect*,

No. 21-16040 (9th Cir. Sept. 24, 2021) at 19–26, ECF No. 7. If it were correct, however, that

---

[3] Per the TOU, Plaintiffs' counsel could have opted out of the arbitration provision, but they did not do so. *See* Mahon Decl. ¶ 9, Ex. 1, § 3; *see also Gupta v. Morgan Stanley Smith Barney, LLC*, 934 F.3d 705, 713–16 (7th Cir. 2019) (failure to opt out indicates assent to arbitration).

[4] Under Illinois law, the right to a jury attaches only "once it is determined that the litigation should proceed before a court. If the claims are properly before an arbitral forum pursuant to an arbitration agreement, the jury trial right vanishes." *Melena v. Anheuser-Busch, Inc.*, 847 N.E.2d 99, 108 (Ill. 2006).

express authority rule would be preempted by the FAA as a rule that "derive[s] [its] meaning from the fact that an agreement to arbitrate is at issue." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). Indeed, the Supreme Court has specifically held that the FAA does not permit states to adopt this sort of "clear-statement rule" where an arbitration agreement can be entered into only with express authority. *See Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, 137 S. Ct. 1421, 1423 (2017).

The Court thus should order arbitration, just as the court did in *Indep. Living Res. Ctr. San Francisco v. Uber Techs., Inc.*, No. 18-CV-06503-RS, 2019 WL 3430656, at *4 (N.D. Cal. July 30, 2019) when faced with similar facts to those here. There, Uber moved to compel arbitration on the grounds that the plaintiffs' agent—a paralegal at the law office representing them—agreed to Uber's terms of service. *Id.* The court held that because the plaintiffs "dispatched their agents to affirmatively test the Uber application in order to bolster their claim of discrimination," they were "bound by the arbitration agreement to the same extent as their agent." *Id.*; *accord Hui Ma v. Golden State Renaissance Ventures, LLC*, No. 3:21-CV-00856-WHO, 2021 WL 2190912, at *4 (N.D. Cal. May 31, 2021). This case is no different. Plaintiffs dispatched their counsel to affirmatively test TruthFinder.com in order to bolster (indeed, create) their claim. And they used the screenshots in their Complaint to try to state a claim.

## II.     The Communications Decency Act Bars Plaintiffs' Claim.

If the Court goes beyond the threshold arbitrability question, which it should not, Plaintiffs' claim fails on multiple additional grounds. Most of all, Section 230 of the CDA provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). The statute, "while not granting blanket immunity to interactive computer services, defines who can be called a 'publisher' for purposes of civil liability." *Hadley v. GateHouse Media Freeport Holdings,*

*Inc.*, No. 12 C 1548, 2012 WL 2866463, at *1 (N.D. Ill. July 10, 2012). Section 230 bars any claim in which: (1) "an online information system" is (2) "treated as the publisher or speaker" of (3) "'any information provided by' someone else." *Chi. Lawyers' Comm. for Civil Rights Under Law, Inc. v. Craigslist, Inc.*, 519 F.3d 666, 671 (7th Cir. 2008). At least two courts have applied these factors to conclude that Section 230 bars certain claims against Intelius.com, a similar website that generates background reports that is owned by the same parent as TruthFinder. *Liberi v. Taitz*, No. SACV 11-0485 AGAJWX, 2011 WL 13315691, at *11 (C.D. Cal. Oct. 17, 2011) (finding CDA 230 immunity and dismissing case); *Obado v. Magedson*, No. Civ. 13-2382 JAP, 2014 WL 3778261, at *7 (D.N.J. July 31, 2014), *aff'd*, 612 F. App'x 90 (3d Cir. 2015) (same).[5]

*First*, TruthFinder is an "online information system" because, as Plaintiffs allege, it owns and operates a public website. *See* Compl. ¶ 1; *Hadley*, 2012 WL 2866463, at *2.

*Second*, because Plaintiffs' claim is premised on TruthFinder's distribution of content, Compl. ¶¶ 1–2, 18–20, 23, their claim treats TruthFinder as a "publisher." *See Chi. Lawyers' Comm.*, 519 F.3d at 671; *see also Ben Ezra, Weinstein, & Co., Inc. v. Am. Online Inc.*, 206 F.3d 980, 983, 985–86 (10th Cir. 2000). Plaintiffs' claim is based on the way in which TruthFinder displays information on TruthFinder.com. *See Force v. Facebook, Inc.*, 934 F.3d 53, 66 (2d Cir. 2019) (Facebook is a "publisher" because it chooses where "third-party content should reside and to whom it should be shown"); *Jane Doe No. 1 v. Backpage.com, LLC*, 817 F.3d 12, 21 (1st Cir. 2016) (Backpage is a "publisher" because claims "address the structure and operation of the

---

[5] While the Seventh Circuit has held that Section 230 is an affirmative defense, dismissal is appropriate at the motion to dismiss stage where, as here, the allegations establish the elements of the defense. *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009). Unlike in *Krause v. RocketReach, LLC*, No. 21 CV 1938, 2021 WL 4282700, at *4 (N.D. Ill. Sept. 21, 2021), Plaintiffs have pled enough facts to establish the elements of Section 230 immunity. Moreover, it is particularly appropriate to address affirmative defenses on the pleadings where, as in this case, the affirmative defense raises (or tracks) First Amendment concerns given the potential chilling effect on speech of claims that trigger such a defense. That is true of virtually all the affirmative defenses presented in this case.

Backpage website … [and] how to treat postings").

*Third*, TruthFinder is a publisher of "information provided by someone else." *Chi. Lawyers' Comm.*, 519 F.3d at 671 (citation omitted). This is clear from the Complaint, which alleges that TruthFinder "compile[s]" the reports from other sources—namely, "databases and public record repositories." Compl. ¶ 18. It makes no difference that Plaintiffs allege that TruthFinder uses this third-party information in what they (erroneously) call advertisements. "[D]isseminating the same content in essentially the same format … does not change the origin of the third-party content." *Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1270 (9th Cir. 2016). What matters is that TruthFinder did not "provide[], create[], or develop[] any portion of the content that [Plaintiffs] allege harmed" them; it published information "provided by third part[ies]." *Klayman v. Zuckerberg*, 753 F.3d 1354, 1358 (D.C. Cir. 2014); *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 331–32 (4th Cir. 1997); *Force*, 934 F.3d at 65.

Additionally, Plaintiffs seek to hold TruthFinder liable for search results generated and displayed *only* in response to a user-initiated search. That moves their claim further into Section 230's core. In this way, Plaintiffs' claim differs from typical right of publicity claims. This is not a case in which a defendant created a billboard or a television commercial that presents Plaintiffs' likenesses to the world. Here, the supposedly impermissible publication of Plaintiffs' information does not appear *at all* on TruthFinder.com unless a user searches for their name. So TruthFinder is just a search engine that provides suggestions based on information inputted by the user. TruthFinder thus publishes material "provided by somebody else." *Gonzalez v. Google*, 2 F.4th 871, 898 (9th Cir. 2021) (holding that Section 230 immunized Google for "recommend[ing] content" when "a user's voluntary actions inform Google about that user's preferences for the types of videos and advertisements the user would like to see"); *Callahan v. Ancestry.com Inc.*,

No. 20-cv-08437-LB, 2021 WL 2433893, at *5 (N.D. Cal. June 15, 2021) (holding that website performed "publisher's traditional editorial function[]" by taking information from yearbooks and "republishing them on its website in an altered format") (quotation omitted).

In response, Plaintiffs likely will cite *Lukis v. Whitepages Inc*., which denied Section 230 protection because "[Whitepages] is alleged to have actively compiled and collated, from several sources, information regarding [the plaintiff]." 454 F. Supp. 3d 746, 763 (N.D. Ill. 2020), *reconsideration denied*, No. 19 C 4871, 2020 WL 6287369 (N.D. Ill. Oct. 27, 2020) ("*Lukis I*"). TruthFinder respectfully submits that *Lukis* is out of step with the prevailing precedent. Indeed, *Lukis* relies heavily on *Huon v. Denton*, where the crucial allegation was that "at least some of the allegedly defamatory comments were authored by Gawker employees." 841 F.3d 733, 743 (7th Cir. 2016). Plaintiffs have alleged no such authorship. Nor could they. As Plaintiffs allege, the search results (and the reports), simply collect biographical data from public records. Compl. ¶ 18. Another court considering similar allegations thus reached the opposite result. *Callahan*, 2021 WL 2433893, at *5 (holding a website that published old yearbooks "was immune from liability" under Section 230 "because it did not create content or contribute materially to the content").

## III. Plaintiffs Have Failed To State A Claim Under IRPA.

### A. Plaintiffs Failed To Plead A Claim Within IRPA's Territorial Scope.

Under Illinois law, a "statute is without extraterritorial effect unless a clear intent … appears from the express provisions of the statute." *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 852–53 (Ill. 2005) (citation omitted). Because nothing in IRPA conveys such an intent,[6] IRPA does not reach non-Illinois conduct. *E.g.*, *Vulcan Golf, LLC v. Google Inc.*, 552 F.

---

[6] Legislative history confirms IRPA was not intended to apply extraterritorially. The bill's sponsor, Rep. Turner, noted that liability under IRPA would be available only for "*the use* of that person's image [or likeness] *here in Illinois*." HB 1422, 90th Gen. Assemb., 49th Leg. House Proceedings, Tr. of House Debate 228 (Ill. Apr. 24, 1997) (statement of Rep. A. Turner) (emphasis added).

Supp. 2d 752, 775 (N.D. Ill. 2008); *Miche Bag, LLC v. Be You, LLC*, No. 11-CV-720, 2011 WL 4449683, at *6 (N.D. Ill. Sept. 26, 2011). An alleged violation "may be said to take place within [Illinois] if the circumstances relating to the transaction occur[red] primarily and substantially" in Illinois. *Avery*, 835 N.E.2d at 853; *Landau v. CNA Fin. Corp.*, 886 N.E.2d 405, 408–09 (Ill. App. Ct. 1st Dist. 2008) (explaining the "majority of circumstances relating to the alleged violation" must have occurred in Illinois and "[a]lthough [plaintiff] alleged that she was deceived by marketing material conceived in Illinois, her contact with company representatives occurred only in Pennsylvania."); *Haught v. Motorola Mobility, Inc.*, No. 12 C 2515, 2012 WL 3643831, at *4 (N.D. Ill. Aug. 23, 2012) ("[T]hough Haught alleges that Motorola's misrepresentations emanated from servers located in Illinois, he has made no allegations that he viewed these representations within the State.").

All Plaintiffs allege is that because they are Illinois citizens, the "unlawful conduct alleged in the Complaint occurred in and emanated from this District." Compl. ¶ 12. But the Illinois Supreme Court has held that a plaintiff's residency is not the test. *Avery*, 835 N.E.2d at 851, 854; *see Valley Air Serv. v. Southaire, Inc.*, No. 06 C 782, 2009 WL 1033556, at *12 (N.D. Ill. Apr. 16, 2009). Nothing about the viability of an IRPA claim turns on whether the claimant is or is not an Illinois citizen. The *sine qua non* of an IRPA claim is the *actual* (as opposed to theoretical) publication of a person's likeness. So, for a claim to be within IRPA's territorial scope, publication must occur in Illinois, meaning the user must be physically located *in Illinois*. Because Plaintiffs failed to plead that anyone viewed *their* data while in Illinois, except potentially Plaintiffs' attorney-agents, Plaintiffs have failed to allege an IRPA violation.[7]

---

[7] This case is unlike *Rivera v. Google Inc.*, 238 F. Supp. 3d 1088, 1104 (N.D. Ill. 2017), where the court declined to consider issues of extraterritoriality on a motion to dismiss in the Biometric and Information Privacy Act ("BIPA") context. In *Rivera*, the plaintiffs alleged *conduct* that by its nature occurred in Illinois—that the plaintiffs had taken photos in Illinois containing their biometric information and, while

### B. Plaintiffs Fail To Plead A *Prima Facie* IRPA Claim.

To plead a *prima facie* claim under IRPA, a plaintiff must allege: "(1) the use of his identity; (2) for commercial purposes; and (3) without his consent." *Vrdolyak v. Avvo, Inc.*, 206 F. Supp. 3d 1384, 1386 (N.D. Ill. 2016) (citation omitted); *see* 765 ILCS 1075/30(a). Plaintiffs have failed to plead the first two of these elements.[8]

### 1. Plaintiffs Fail To Plead A Public Use Or Holding Out Of Their Identities.

Plaintiffs must allege "the public use or holding out of [their] identit[ies]." 765 ILCS 1075/5; *id*. 1075/30(a). This requires an allegation that TruthFinder actually disseminated their identities. *See Blair v. Nevada Landing P'ship*, 859 N.E.2d 1188, 1193–94 (Ill. App. Ct. 2d Dist. 2006). Yet all Plaintiffs allege is that they "discovered that Defendants were using their identity." Compl. ¶¶ 26, 30. Plaintiffs do not identify *who,* if anyone, viewed their identities. That is crucial because if the only persons to have searched for Plaintiffs' name and viewed a search result containing Plaintiffs' information were themselves (or their attorney-agents), then Plaintiffs have not stated a violation of IRPA. A self-generated, nonpublic "use" of an identity is not actionable—certainly neither IRPA's text nor its legislative history suggests that IRPA applies if a defendant shows a plaintiff their identity *to them alone* in response to *an inquiry from them*.

To the contrary, IRPA's purpose is to address a circumstance antithetical to a self-imposed "use"; the public presentation of a person's identity in a false or misleading endorsement of a product. During the legislative debate over IRPA, representatives "cited examples of the kind of commercial uses that the IRPA is meant to address." *Thompson v. Getty Images (US), Inc.*, No. 13

---

still in Illinois, uploaded the photos to Google, which harvested that biometric information from the photos. *Id.*; *see also* First Amended Class Action Complaint, *Rivera*, 1:16-cv-02714, 2016 WL 3448167 (N.D. Ill. May 27, 2016); ECF No. 40. There are no analogous allegations here.

[8] For the purposes of this motion alone, TruthFinder accepts Plaintiffs' allegation that they did not consent as well-pled.

C 1063, 2013 WL 3321612, at *2 (N.D. Ill. July 1, 2013). Each involved a public-facing use of someone's identity that would necessarily be viewed by someone other than the depicted person. HB 1422, 90th Gen. Assemb., 49th Leg. House Proceedings, Tr. of House Debate 7–8 (Ill. May 21, 1998) (statement of Rep. Black); *supra* note 4, 90th Gen. Assemb., House Proceedings, Tr. of House Debate 227 (noting as examples ads using legislator's picture on back of a bus "indicating that he endorsed" a hair tonic and a "commercial" depicting "Fred Astaire dancing with a vacuum"). Because Plaintiffs have not alleged any such public 'use,'" their IRPA claims fail.

### 2. Plaintiffs Fail To Plead That TruthFinder Used Their Identity For A Commercial Purpose.

Plaintiffs allege that TruthFinder used their identity for a commercial purpose by displaying their names and other identifying information in a search result generated by a TruthFinder user. Compl. ¶¶ 2, 18–20, 23. The lynchpin to the claim is Plaintiffs' bald assertion that the search result is an "advertisement" for a TruthFinder "monthly subscription" which includes access to the searched for individual's report. *Id.* ¶¶ 1, 22.

In *Dobrowolski*, the court found that a website materially identical to TruthFinder does not use a person's identity for a "commercial purpose." 2018 WL 11185289, at *3. It explained that Intelius's search results list "reports on different individuals with the searched name" so the consumer could "identify the correct individual out of a list of people who shared the same first and last names," and the search results page included additional information about each listed individual, such as their ages and cities of residence. *Id.* at *1. This, the court held, fails to state an IRPA claim because "[t]he plaintiffs' identities are not used to promote a separate product—they are used because plaintiffs' identities are part of the product offered for sale." *Id.* at *3.

*Dobrowolski* reflects that "IRPA prohibits the use of an individual's image [or identity] to promote or entice the purchase of *some other product*," but does not prohibit using an individual's

identity when "a photograph" or another work about the person is the very thing the consumer "is considering whether to buy." *Thompson*, 2013 WL 3321612, at \*2 (emphasis added). Thus, alleged advertisements are actionable only if the plaintiff's identity is used, without consent, to promote a product that is "wholly unrelated to the individual." *Rogers v. Grimaldi;* 875 F.2d 994, 1004 (2d Cir. 1989) (quotation marks omitted); *Gionfriddo v. Major League Baseball*, 94 Cal. App. 4th 400, 413 (Cal. Ct. App. 2001); *Local TV, LLC v. Superior Ct.*, 3 Cal. App. 5th 1, 9 (Cal. Ct. App. 2016).

*Nieman v. Versuslaw, Inc.* is instructive on this point. No. 12-3104, 2012 WL 3201931 (C.D. Ill. Aug. 3, 2012), *aff'd*, 512 F. App'x 635 (7th Cir. 2013). There, the plaintiff sued an online database of court records claiming the website violated IRPA by displaying his name in "online search results" and "linking copies of documents" to him that a user could access for a fee. 512 F. App'x at 636–37. The court rejected the theory: "[p]laintiff's identity is not being used for a 'commercial purpose'… because his name is used only to find documents related to his case. … His name is not being … used to entice anyone to buy a product." 2012 WL 3201931, at \*4; *accord Obado*, 2014 WL 3778261, at \*7 ("The mere appearance of [p]laintiff's name or image as part of the search results displayed in response to a user-generated query does not mean that the relevant company used [p]laintiff'[s] name for advertising or trade purposes."). The same is true here.

In response, Plaintiffs likely will again cite the *Lukis* opinions and *Siegel v. Zoominfo Techs., LLC*, No. 21 C 2032, 2021 WL 4306148 (N.D. Ill. Sept. 22, 2021), which both attempt to distinguish *Dobrowolski* and similar authorities on the theory that the plaintiff alleged the defendant was "advertis[ing]" a "separate product" from the underlying background report—a "subscription service."[9] *Lukis I,* 454 F. Supp. 3d at 760–61 (citation omitted). But TruthFinder's

---

[9] This theory is also at odds with the allegations in the *Dobrowolski* complaint, which referenced an option to purchase unlimited reports. First Amended Complaint, *Dobrowolski v. Intelius, LLC*, No. 17-1406 (N.D. Ill. Sept. 14, 2017), ECF. No. 44, ¶ 17 ("Customers either pay a one-time fee per report or purchase a membership for access to unlimited reports.").

subscription service *includes* access to the searched for individual's report, not a wholly unrelated product. *Dobrowolski*, 2018 WL 11185289, at *3. Search results do not have a commercial purpose if they are "*part* of the product offered for sale." *Id.* (emphasis added). The *Lukis* opinions also suggest the reports contain more information than the free previews and thus are "a product 'separate' from the aspects of identity included in the free previews." *Lukis v. Whitepages Inc.*, No. 19 C 4871, 2020 WL 6287369, at *4 (N.D. Ill. Oct. 27, 2020) ("*Lukis II*"). But neither *Lukis* nor *Siegel* cites any authority for this "entire product or service" test. None exists. *See Thompson*, 2013 WL 3321612, at *2 (IRPA prohibits use of identity "to promote or entice the purchase of some other product" but not a product the consumer "is considering whether to buy"). As Plaintiffs acknowledge, the "product" TruthFinder sells are background "reports about people," and the subscription is one way of buying these reports—not a subscription to a product or service separate and apart from the reports. Compl. ¶¶ 1, 44.

Moreover, the screenshots of the search results in the Complaint refute that the results are advertisements. They show that after a user types in a first and last name, TruthFinder.com reflects the searched name back to the user to confirm whether TruthFinder can prepare a report for that person. *Id.* If the user clicks "Open Report," the user then is taken through a number of different screens before being taken to an entirely *different* page that provides the option to register for a TruthFinder subscription. *Id.* ¶ 16. Thus, the Complaint shows nothing on TruthFinder.com that uses Plaintiffs' likeness in a way that can be fairly characterized as "advertising." Plaintiffs cannot run from these facts by pleading conclusory allegations to the contrary. *See Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013) (noting that if "an exhibit incontrovertibly contradicts the allegations in the complaint, the exhibit ordinarily controls").

### C. Plaintiffs' Claim Falls Within IRPA's Statutory Exemptions.

To "avoid[] … serious First Amendment problems," IRPA carves out various uses of an

14

individual's identity to which IRPA does not apply. *Collier v. Murphy*, No. 02 C 2121, 2003 WL 1606637, at *3 (N.D. Ill. Mar. 26, 2003). Three of the relevant carve outs are: (i) Section 35(b)(1) ("Exemption 1") exempts any "book," "article," or "other [] visual … work" that "portray[s] [or] describe[s]" an individual; (ii) Section 35(b)(2) ("Exemption 2") exempts any use of a person's identity for "non-commercial purposes, including any news [or] public affairs …"; and (iii) Section 35(b)(4) ("Exemption 4") exempts any "advertisements … for a use described under" the preceding exemptions. 765 ILCS 1075/35. The Court should dismiss Plaintiffs' claim under these exemptions for the same reason the Illinois legislature included them—doing so avoids the "serious First Amendment problems" inherent in Plaintiffs' claim.

### 1.    IRPA Exemption 1 Bars Plaintiffs' Claim.

TruthFinder's background reports fall under Exemption 1 because they are a "book," "article," or "other [] visual … work" that "portray[s] [or] describe[s]" an individual. 765 ILCS 1075/35(b)(1). Each background report is a written, visual document that provides biographical information to a reader about a particular person. *See* Compl. ¶ 20. Each report could be viewed as a separate "article," or TruthFinder could be viewed as an online encyclopedia (a "book") comprised of millions of biographical articles, or the reports could be viewed as some "other" type of "visual … work." 765 ILCS 1075/35(b)(1).

Because the reports are covered by Exemption 1, even if one accepts the Complaint's characterization of the search results as "advertisements," the search results fall under Exemption 4. Exemption 4 bars claims based on the use of an individual's identity in an advertisement for an activity protected under Exemption 1. 765 ILCS 1075/35(b)(4). This exemption makes sense, particularly so in the context of internet websites. It is common for websites to respond to user-generated queries with previews of a product a merchant hopes to sell through its internet site.

Exemption 4 is consistent with the fact that Illinois did not endeavor to stamp out so fundamental an aspect of modern internet commerce.

Plaintiffs likely will cite *Lukis* and *Krause v. RocketReach, LLC,* No. 21 CV 1938, 2021 WL 4282700 (N.D. Ill. Sept. 21, 2021) to argue that Exemption 1 does not apply (and Exemption 4 thus does not come into play). But *Lukis* and *Krause*'s reasoning rests on an interpretation of Exemption 1 contrary to other court rulings. Exemption 1 states that IRPA does not apply to "a single and original work of fine art, play, book, article, musical work, film, radio, television, or other audio, visual, or audio-visual work." 765 ILCS 1075/35(b)(1). Citing the "single and original" modifier of "work of fine art," *Lukis* held that a "book," "article," or "other [] visual … work" must also be "single and original" and that background reports are not. *Lukis II*, 2020 WL 6287369, at *4–5. But, as other courts have held, the grammar and legislative intent of Exemption 1 make clear that the term "single and original" modifies only "work of fine art" and not the other works that follow it—which, by their nature, are not "single" or necessarily "original." *E.g.*, *Collier*, 2003 WL 1606637, at *3 (holding that it would "violate the rules of grammar," "nullify the exemption" and "do violence to common sense" to apply modifier for "work of fine art" to other exempted works).

*Krause* cited only one of the *Lukis* opinions for its ungrammatical reading of "single and original," while *Lukis* cited no authority for that construction. *Krause*, 2021 WL 4282700, at *2; *see also Lukis I*, 454 F. Supp. 3d at 761. The flaw in it is even more glaring, however, when compared to other states' right of publicity statutes. At least six such statutes use the term "single and original" and each unambiguously uses it to refer only to "works of fine art."[10] These statutes illustrate that "single and original" is a standardized term legislatures incorporate into right of

---

[10] *E.g.*, Wash. Rev. Code § 63.60.070(2)(a); Ariz. Rev. Stat. § 12-761(H)(1); Cal. Civ. Code § 3344.1(a)(2); Haw. Rev. Stat. § 482P-7(b)(1); Okla. Stat. tit. 12, § 1448(N)(3); Tex. Prop. Code § 26.012(a)(4).

publicity laws to describe "works of fine art." It is not plausible that the Illinois legislature intended to break from its sister states' consistent usage and alter this term by applying it to *each* exempted type of work. And it is doubly implausible that the legislature did so in a way that is ungrammatical and without any hint of such an intention in the legislative record.

In all events, TruthFinder's background reports *are* "single and original." The Complaint alleges that TruthFinder generates its background reports by "compil[ing]" records from "databases and public record repositories." Compl. ¶ 18. That satisfies Exemption 1, even under the erroneous view of IRPA embraced by *Lukis* and *Krause*.

### 2. IRPA Exemption 2 Bars Plaintiffs' Claim.

Exemption 2 also applies because the reports use an individual's identity for "non-commercial purposes, including any news [or] public affairs" under Section 35(b)(2). They do so, most fundamentally because they provide biographical information without proposing any sort of commercial transaction. That is paradigmatic of using an individual's identity for "non-commercial purposes." 765 ILCS 1075/35(b)(2). The background reports independently fall under Exemption 2 because they serve a "news [or] public affairs" purpose. *Id.* As the Seventh Circuit has explained, "[t]he newsworthiness or public interest exception should be construed broadly, covering … any subject of public interest." *Bogie*, 705 F.3d at 614 (citation omitted) (affirming dismissal of Wisconsin right of publicity claim). Courts thus have dismissed IRPA claims under Exemption 2 where the allegedly infringing work contained information related to criminal records and proceedings, even when no public figure or journalistic context was involved. *E.g.*, *Best v. Berard*, 776 F. Supp. 2d 752, 758 (N.D. Ill. 2011); *see Nieman*, 512 F. App'x at 638.

Here, and as Plaintiffs acknowledge, the reports themselves contain information from "public record[s]," Compl. ¶ 18, including "criminal history." *Id.* ¶ 19. That satisfies the public interest criteria of Exemption 2. *See Best*, 776 F. Supp. 2d at 758–59. And again, because the

reports themselves are protected by Exemption 2, Exemption 4 bars Plaintiffs' attempt to impose liability for any purported "advertisements" for those reports based upon the use of identifying information in those supposed advertisements. *See* 765 ILCS 1075/35(b)(4).

## IV. TruthFinder's Alleged Conduct Is Protected By The U.S. Constitution.

Plaintiffs' claim is not viable for an additional reason. Applying IRPA here violates at least two provisions of the U.S. Constitution.

### A. TruthFinder's Search Results Are Protected Speech Within The First Amendment.

"[T]he creation and dissemination of information are speech within the meaning of the First Amendment." *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 570 (2011). Courts thus have held that the First Amendment protects directories of names, addresses, phone numbers, and other identifying information. *E.g.*, *Dex Media W., Inc. v. City of Seattle*, 696 F.3d 952, 954 (9th Cir. 2012) ("[Y]ellow pages directories qualify for full protection under the First Amendment."); *Health Sys. Agency of N. Va. v. Va. State Bd. of Med.*, 424 F. Supp. 267, 272–73 (E.D. Va. 1976) (publication of physician information, including name and phone number protected). Further, "economic motive in itself is insufficient to characterize a publication as commercial." *Dex Media W., Inc.*, 696 F.3d at 960 (citing *Bolger v. Youngs Drug Prod. Corp.*, 463 U.S. 60, 67 (1983)).[11]

The material Plaintiffs seek to suppress unquestionably constitutes protected speech. The Complaint alleges that TruthFinder provides a "list of the individuals" and their "name," "age," "location," and "names of their immediate family members" that are "found" in response to a user query in the search engine on TruthFinder's homepage. Compl. ¶ 20. This is the sort of factual

---

[11] *Knapke* is not owed any deference on its analysis of the First Amendment issues. 2021 WL 3510350, at *8. The court erred in *Knapke* by holding that speech is commercial if its "purpose" is to "entic[e] viewers into buying" a website's services. *Id.* Speech is commercial only if it "does no more than propose a commercial transaction." *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 776 (1976) (Stewart., J. concurring)).

information the First Amendment protects. *Sorrell*, 564 U.S. at 570. From a constitutional perspective, there is no distinction between TruthFinder's search results and a yellow pages directory, *Dex*, 696 F.3d at 962, a directory of attorney information, *Vrdolyak*, 206 F. Supp. 3d at 1389, or a physician directory, *Health Sys. Agency*, 424 F. Supp. at 272.

What is more, the Seventh Circuit has emphasized that particularly sacrosanct is the publication of information already in the public domain. *Nieman*, 512 F. App'x at 638 (dismissing IRPA clam); *see Willan v. Columbia Cnty.*, 280 F.3d 1160, 1163 (7th Cir. 2002). Indeed, it is axiomatic that the First Amendment protects the dissemination of information drawn from public records. *E.g.*, *Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 495 (1975); *see also Ostergren v. Cuccinelli*, 615 F.3d 263, 286–87 (4th Cir. 2010). Plaintiffs' names, locations, ages, and possible relatives is exactly the type of information that is by nature in the public domain and commonly found in public records. *See Vrdolyak*, 206 F. Supp. 3d at 1386, 1389 (holding that First Amendment precludes IRPA liability for online directory of attorneys with identifying "information gleaned from public records").

### 1. Plaintiffs' Proposed Content-Based Restriction On Non-Commercial Speech Triggers Strict Scrutiny.

Plaintiffs' proposed application of IRPA to protected First Amendment speech amounts to a content-based restriction, to which strict scrutiny applies. *Reed v. Town of Gilbert*, 576 U.S. 155, 163–64 (2015); *see Vrdolyak*, 206 F. Supp. 3d at 1389. Under strict scrutiny, laws restricting content are "presumptively unconstitutional" and must be "narrowly tailored to serve compelling state interests" to survive. *Reed*, 576 U.S. at 163; *see Sorrell*, 564 U.S. at 571 (fact that law is content-based is "all but dispositive"). Here, Plaintiffs cannot show that applying IRPA to TruthFinder's search results serves a compelling state interest, let alone that it is narrowly tailored.

Because Plaintiffs cannot overcome strict scrutiny, Plaintiffs likely will argue the search results are subject to the less demanding review associated with regulations of commercial speech. That is incorrect. Commercial speech is speech that "does no more than propose a commercial transaction." *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 776 (1976) (Stewart, J. concurring). But the search results do not "propose a commercial transaction" at all. *Id*. Only one of the screenshots in the Complaint even mentions a commercial transaction, and in that instance the information is not part of the proposal. Compl. ¶ 21. Moreover, the search results republish factual information available in public records. As the Seventh Circuit has held, claims based on such "republication … are barred by the First Amendment privilege." *Nieman*, 512 F. App'x at 638.

To the extent Plaintiffs would argue that the search results are commercial speech as a matter of "common-sense," they would be wrong. *See Jordan v. Jewel Food Stores, Inc.*, 743 F.3d 509, 517 (7th Cir. 2014). As discussed above, the search results are not advertisements. Indeed, Plaintiffs allege that the search results simply "show potential customers that Defendant's database contains detailed reports for the *specific* individual they searched for." Compl. ¶ 2. And even if Plaintiffs' characterization of the search results as "advertisements" were correct, advertisements still are "entitled to First Amendment protection to the same extent as the underlying publication" because they are "'merely an adjunct of the protected publication and promote[] only the protected promotion.'" *William O'Neil & Co., Inc. v. Validea.com Inc*., 202 F. Supp. 2d 1113, 1119 (C.D. Cal. 2002) (quoting *Cher v. Forum Int'l, Ltd.*, 692 F.2d 634, 637–39 (9th Cir. 1982), *abrogated on other grounds as recognized in McQuiston v. Marsh*, 790 F.2d 798, 801 (9th Cir. 1986)); *see Bolger*, 463 U.S. at 66–67 & n.14 ("The mere fact that these pamphlets are conceded to be advertisements clearly does not compel the conclusion that they are commercial speech," and

where pamphlets advertise speech protected by the First Amendment they should be deemed non-commercial speech); *Commodity Trend Serv., Inc. v. Commodity Futures Trading Comm'n*, 149 F.3d 679, 685 (7th Cir. 1998) ("A speaker's publication does not lose its status as protected speech simply because the speaker advertises" it.).[12] This principle derives from the fact that courts must "ensure that First Amendment-protected expression is not unduly chilled by the threat of tort actions that would otherwise prevent the truthful promotion of expressive works." *Simoni v. Am. Media, Inc.*, No. CV 14-573-R, 2014 WL 12597640, at *2 (C.D. Cal. July 22, 2014), *aff'd*, 673 F. App'x 782 (9th Cir. 2017) (quotation omitted).

## 2. Even If The Conduct Alleged Were Commercial Speech, Plaintiffs Cannot Satisfy Intermediate Scrutiny.

If TruthFinder's speech were commercial, the restrictions imposed by IRPA still must survive intermediate scrutiny.[13] *See F.T.C. v. Trudeau*, 662 F.3d 947, 953 (7th Cir. 2011). To survive intermediate scrutiny, there must be: (1) "a substantial interest supporting"; (2) a restriction that "directly advances that substantial interest"; and (3) that the restriction "is 'narrowly drawn.'" *Id.* (quoting *Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*, 447 U.S. 557, 564–65 (1980)). The Seventh Circuit analyzes the second and third prongs together, asking if there is a "'reasonable fit'" between the restriction on the speech at issue and the "goal to be achieved by that restriction." *Pearson v. Edgar*, 153 F.3d 397, 401, 402–03 (7th Cir. 1998) (citation omitted).

---

[12] *Accord Namath v. Sports Illustrated*, 363 N.Y.S.2d 276, 278–80 (N.Y. Sup. Ct. 1975) (magazine's use of Joe Namath's identity to advertise subscription protected by First Amendment), *aff'd*, 371 N.Y.S.2d 10 (N.Y. App. Div. 1st Dep't 1975), *aff'd*, 39 N.Y.2d 897, 898 (N.Y. 1976); *Montana v. San Jose Mercury News, Inc.*, 34 Cal. App. 4th 790, 796 (Cal. Ct. App. 1995) (newspaper's use of Joe Montana's identity to advertise subscription protected); *see also Groden v. Random House, Inc.*, 61 F.3d 1045, 1050–51 (2d Cir. 1995); *Page v. Something Weird Video*, 960 F. Supp. 1438, 1443 (C.D. Cal. 1996); *Esch v. Universal Pictures Co., Inc.*, No. 6:09-cv-02258-JEO, 2010 WL 5600989, at *6 (N.D. Ala. Nov. 2, 2010).

[13] Plaintiffs may point to *Krause*, but the court there did not address if the plaintiff could satisfy intermediate scrutiny because the defendant had not made that argument. *See Krause*, 2021 WL 4282700, at *3.

This test is nowhere near satisfied. First, Plaintiffs do not allege the speech is "misleading [or] related to unlawful activity," so there is no substantial interest in its regulation. *Central Hudson*, 447 U.S. at 564; *see Va. State Bd. of Pharmacy*, 425 U.S. at 773 (holding that State may not "suppress the dissemination of concededly truthful information about entirely lawful activity"). Second, there is no "reasonable fit" between IRPA's aim—preventing unauthorized commercial endorsements—and barring TruthFinder's publication of search results that identify persons included in its background reports. There is nothing "narrowly drawn" about Plaintiffs' seemingly limitless proposed application of IRPA, which would sweep in any online retailer or publisher that uses search results to identify a person as the subject of a product in response to a user-generated query. So even under the commercial speech standard, the First Amendment bars Plaintiffs' claim.

## B. Applying IRPA To Search Results Violates The Dormant Commerce Clause.

When a state statute regulates out-of-state conduct, it is a *per se* violation of the Dormant Commerce Clause. *E.g.*, *Healy v. Beer Inst., Inc.*, 491 U.S. 324, 336–37 (1989) ("[T]he Commerce Clause protects against inconsistent legislation arising from the projection of one state regulatory regime into the jurisdiction of another State."); *Midwest Title Loans, Inc. v. Mills*, 593 F.3d 660, 665 (7th Cir. 2010) ("[A]nother class of nondiscriminatory local regulations is invalidated without a balancing of local benefit against out-of-state burden, and that is where states actually attempt to regulate activities in other states."). Courts can and do resolve this question on a motion to dismiss. *E.g.*, *Est. of Graham v. Sotheby's Inc.*, 860 F. Supp. 2d 1117, 1119 (C.D. Cal. 2012). That is appropriate here, as Plaintiffs' proposed application of IRPA regulates *conduct*—the publication of Plaintiffs' information to users viewing their electronic devices—that occurred *outside* of Illinois. *See supra* Section III.A.

Further, even if Plaintiffs had alleged a violation of IRPA occurred in Illinois, which they have not, applying IRPA to TruthFinder's search results burdens its ability to engage in interstate

commerce in a way that is wholly out of proportion to the *de minimis* state interest in suppressing those results. In cases such as these, the potential disparate effect of the statute must be balanced against the state's interest in the regulation. *Nat'l Paint & Coatings Ass'n v. City of Chicago*, 45 F.3d 1124, 1131 (7th Cir. 1995) ("When the effect is powerful, acting as an embargo on interstate commerce without hindering intrastate sales, the Court treats it as equivalent to a statute discriminating in terms."). There is no reasonable connection between TruthFinder's display of search results in response to user-generated queries and the legislature's intended aims of IRPA— protecting against false endorsements of products. *See Thompson*, 2013 WL 3321612, at *2. So the state interest here is negligible, at best.

This negligible interest is far outweighed by the burden on interstate commerce of applying IRPA as Plaintiffs propose. Because of the "boundary-less" nature of the internet, TruthFinder's business is nationwide and interstate. *Am. Booksellers Found. v. Dean*, 342 F.3d 96, 103 (2d Cir. 2003) ("Because the internet does not recognize geographic boundaries, it is difficult … for a state to regulate internet activities without 'project[ing] its legislation into other States.'") (citation omitted). If IRPA forbids TruthFinder's search results, then TruthFinder must continually ascertain the exact physical location of each user who views a search result, whether that person is using a tablet, laptop, or smartphone, and then block any search result from displaying to users while they are located in Illinois. Truthfinder's only alternative would be to impose IRPA's restrictions nationwide, notwithstanding that many states do not have right of publicity laws and those that do differ in scope. *See* 1 Rights of Publicity and Privacy § 6:3, Westlaw (2d. ed. updated 2021).[14]

Putting TruthFinder to the choice of either excising Illinois from its nationwide

---

[14] Courts have recognized that the Dormant Commerce Clause often is implicated by state regulation of internet-based businesses. *Am. Booksellers Found.*, 342 F.3d at 103; *see also Am. Libraries Ass'n v. Pataki*, 969 F. Supp. 160, 181 (S.D.N.Y. 1997); *ACLU v. Johnson*, 194 F.3d 1149, 1161–62 (10th Cir. 1999); *PSINet, Inc. v. Chapman*, 362 F.3d 227, 240 (4th Cir. 2004).

transmission of search results—to the extent it is even technologically feasible—or treating IRPA as a nationwide directive would be an extraordinary interference of one state's law with interstate commerce. It would "exalt the public policy of [Illinois] over that of another" state. *Midwest Title Loans, Inc.*, 593 F.3d at 667–68. That is just what the Commerce Clause forbids.

## V.  The Court Lacks Personal Jurisdiction Over Defendant.

Not only have Plaintiffs failed to allege that an IRPA violation occurred in Illinois, *see supra* Section III.A, they fail even to adequately allege that TruthFinder has sufficient "minimum contacts" with Illinois to support the Court's exercise of personal jurisdiction. *See* Fed. R. Civ. P. 12(b)(2). Specific jurisdiction exists only if: (1) TruthFinder "purposefully directed its conduct into the forum State"; and (2) Plaintiffs' claim "arise[s] out of or relate[s] to" TruthFinder's "forum conduct." *See Bristol-Myers Squibb Co. v. Superior Ct. of Cal. San Francisco Cnty.*, 137 S. Ct. 1773, 1785–86 (2017) (citation omitted); *see also N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 492 (7th Cir. 2014). The "core focus [in this inquiry] is always on the defendants' conduct, not the plaintiff's damages." *J.S.T. Corp. v. Foxconn Interconnect Tech. Ltd.*, 965 F.3d 571, 578 (7th Cir. 2020). Plaintiffs do not offer a theory of TruthFinder's Illinois conduct that would pass this test.

*First,* Plaintiffs allege that TruthFinder "transact[s] significant business in this District." Compl. ¶ 12. Operating a website accessible in the forum state that does not specifically target that state, however, does not create specific jurisdiction. *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 801–03 (7th Cir. 2014); *be2 LLC v. Ivanov*, 642 F.3d 555, 559 (7th Cir. 2011); *see Gullen v. Facebook.com, Inc.*, No. 15 C 7681, 2016 WL 245910, at *2 (N.D. Ill. Jan. 21, 2016).[15] Plaintiffs have not alleged that TruthFinder does anything more than

---

[15] Plaintiffs may try to point to *Lukis I*, 454 F. Supp. 3d at 757 (emphasis added), but in *Lukis*, "[t]he complaint alleges that Whitepages knowingly searches for and obtains private and public records *regarding Illinois residents*." Here, TruthFinder's complaint contains no such allegation.

make its website available in Illinois; they have failed to establish specific jurisdiction.

*Second*, Plaintiffs allege that TruthFinder misappropriates "the identities of people that they know reside in this District." Compl. ¶ 12. This, however, does not suffice to show there is specific jurisdiction. *Advanced Tactical Ordinance Sys., LLC*, 751 F.3d at 802. Plaintiffs must allege that "defendant['s] conduct" created "suit-related" contacts to Illinois. *J.S.T. Corp.*, 965 F.3d at 578; *Advanced Tactical Ordinance Sys., LLC*, 751 F.3d at 801. To be sure, the Supreme Court recently held this does not mean there must be a "strict causal relationship" between a defendant's forum contacts and their alleged injuries—though in doing so the Court was careful to note its decision did not "consider internet transactions, which may raise doctrinal questions of their own." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1026, 1028 n.4 (2021). But even if it is assumed that under *Ford Motor Co.* plaintiffs need not allege a "strict causal relationship"—as Plaintiffs clearly have not done—they still must allege a "link between the defendant's forum contacts and the plaintiff's suit." *Id.* at 1031–32. Here, Plaintiffs fail to allege any facts that tie TruthFinder to Illinois for purposes of the specific allegations of this lawsuit—the supposedly unlawful publication of identifying information in response to a user search on TruthFinder.com.

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed, and Plaintiffs compelled to adjudicate their claim in arbitration. In the alternative, the Complaint should be dismissed for the lack of personal jurisdiction over TruthFinder. And if the Court does not dismiss the Complaint on either of these bases, the Court should dismiss the Complaint with prejudice for the reasons set forth above, as Plaintiffs have had multiple attempts to plead actionable claims against TruthFinder.

Dated: September 27, 2021      Respectfully Submitted,

TRUTHFINDER, LLC

By:    */s/ Wade A. Thomson*         

Wade A. Thomson, #6282174
Debbie L. Berman, #6205154
Clifford W. Berlow, #6292383
Sarah L. Futernick, #6315365
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654-3456
Telephone: 312 222-9350
Facsimile: 312 527-0484
wthomson@jenner.com
dberman@jenner.com
cberlow@jenner.com
sfuternick@jenner.com

*Attorneys for Defendant TruthFinder, LLC*

## **CERTIFICATE OF SERVICE**

I, Wade A. Thomson, certify that on September 27, 2021, I caused the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will then send a Notice of Electronic Filing to all counsel of record.

/s/ *Wade A. Thomson*
Wade A. Thomson